Cite as 2022 Ark. App. 76

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-20-542

| | |
|---|---|
| MALIK MUNTAQIM<br>ADC #088633<br><br>APPELLANT<br><br>V.<br><br>WENDY KELLEY, DIRECTOR,<br>ARKANSAS DEPARTMENT OF<br>CORRECTION, ET AL.<br>APPELLEES | **Opinion Delivered** February 16, 2022<br><br>APPEAL FROM THE HOT SPRING<br>COUNTY CIRCUIT COURT<br>[NO. 30CV-19-235]<br><br>HONORABLE EDDY EASLEY,<br>JUDGE<br><br>AFFIRMED IN PART; REVERSED<br>AND REMANDED IN PART |

## LARRY D. VAUGHT, Judge

Pursuant to 42 U.S.C. § 1983, Malik Muntaqim filed a pro se civil-rights complaint in the Hot Spring County Circuit Court against the following employees of the Arkansas Department of Correction (ADC) in their official and individual capacities: Wendy Kelley, director of the ADC; Dexter Payne, deputy director of the ADC;[1] James Gibson, warden, Varner Supermax (VSM); James Shipman, deputy warden, VSM; Floria Washington, classification officer, VSM; Steve Outlaw, deputy warden, Ouachita River Correctional Unit (ORCU); Jerilyn Hosman, classification officer, ORCU; and Nurzuhal Faust, warden, ORCU. In his complaint, Muntaqim alleged that he was transferred to VSM and placed in the VSM unit incentive program in retaliation for exercising his First Amendment rights and in violation

---

[1]Kelley is no longer director of the Arkansas Department of Correction, and the position was taken by Payne.

of his equal-protection and due-process rights. Muntaqim requested injunctive relief in the form of being removed from the incentive program and the amendment of his correctional file along with monetary relief of compensatory and punitive damages. Appellees filed a motion to dismiss, which was granted by the circuit court. The circuit court also found that the dismissal constituted a strike pursuant to Arkansas Code Annotated section 16-68-607 (Supp. 2021). On appeal, Muntaqim argues that the circuit court abused its discretion in dismissing his complaint. We affirm in part and reverse in part.

I. *Standard of Review*

The standard of review for the granting of a motion to dismiss is whether the circuit court abused its discretion. *Muntaqim v. Payne*, 2021 Ark. 162, at 3, 628 S.W.3d 629, 634. An abuse of discretion occurs when the court has acted improvidently, thoughtlessly, or without due consideration. *Id.* at 3, 628 S.W.3d at 634. In reviewing the circuit court's decision on a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Id.*, 628 S.W.3d at 634. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.*, 628 S.W.3d at 634. However, our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.*, 628 S.W.3d at 634. Furthermore, because sovereign immunity is jurisdictional immunity from suit, jurisdiction must be determined entirely from the pleadings. *Id.*, 628 S.W.3d at 634.

## II. *Background*

From a review of the complaint and the documents attached and incorporated into the complaint, Muntaqim's civil-rights action is based on the following alleged facts. On June 12, 2018, a major disciplinary violation was issued against Muntaqim at ORCU for striking a correctional officer in the face with a "closed fist." As a result of this violation, the ORCU classification committee that included Outlaw and Hosman recommended that Muntaqim be transferred to VSM. The record indicates that the ADC's form titled "Notice of Supermax Placement" was dated June 25, 2018, with a classification hearing scheduled to take place on June 26, 2018. The ADC's classification summary and supermax placement indicate that the basis for the action taken by the classification committee included the findings resulting from a disciplinary hearing held on June 20, 2018, and that the evidence adduced at the hearing consisted solely of the incident report. The classification committee made its decision on June 26, 2018, and the decision of the classification hearing was affirmed by Payne. Payne's signature affirming the decision was dated June 25, 2018, the day before the committee's decision. Muntaqim appealed the classification-hearing decision on June 26.

Muntaqim was transferred to VSM on July 31, 2018. After the transfer, Shipman and Washington assigned Muntaqim to the VSM incentive program for eighteen months. Muntaqim filed a grievance related to his assignment to the VSM incentive program. Payne sent Muntaqim a letter dated July 9, 2018, in response to Muntaqim's appeals challenging his assignment to VSM and his placement in the VSM incentive program. In the letter, Payne informed Muntaqim that there was no official appeal process from the placement in the

3

incentive program and further stated that he had reviewed the decision to assign Muntaqim to VSM and again affirmed the transfer.

Muntaqim filed grievances in October and November 2018, alleging that Payne had denied him due process in his placement in the incentive program by denying his right to appeal the decision. Muntaqim also alleged that Payne was biased because he dated the affirmance of the transfer to VSM on June 25, 2018, prior to the June 26, 2018 decision by the classification committee. Muntaqim's attempt to appeal the transfer and placement in the incentive program was sent to Payne for resolution, and Payne responded on December 11, 2018, reaffirming the transfer, explaining that the date affirming the classification committee's ruling was a "typo," and stating that Muntaqim's complaints regarding his transfer had already been reviewed by Payne. Muntaqim had also filed grievances against Payne, Washington, and Shipman for violating his right to due process with respect to the classification hearing. These grievances were denied on the basis that Payne's decision was final, and on January 24, 2019, Payne filed a response to Muntaqim's due-process appeal and affirmed the denial of the grievance.

Muntaqim filed another grievance against separate appellees Kelley, Gibson, Shipman, and Washington on January 7, 2019, alleging that the appellees had violated his right to due process by turning a "blind eye" to alleged irregularities in the classification hearing that resulted in his transfer to VSM. On January 16, 2019, Payne addressed this grievance and denied it, stating that he would not address the merits of Muntaqim's appeal.

Finally, in June 2019, Muntaqim filed a grievance against separate appellee Gibson for failing to provide access to copies of VSM policies delineating guidelines for placement in

4

VSM as well as appeal and reintegration procedures. Payne denied the appeal from the grievance regarding the lack of access to certain VSM guidelines on the basis that the ADC management team decides which policies are made available to inmates. In addition to filing the above-cited multiple grievances, Muntaqim sent letters to Kelley objecting to his assignment to VSM. Kelley's office did not address the complaints but informed Muntaqim that he had an opportunity to object during the course of the classification hearing and that the office of the director is not involved in resolving grievances.

III. *Claims for Relief*

In his complaint, Muntaqim claimed that his transfer to VSM was motivated by retaliation for the multiple grievances and actions he had filed on his own behalf in 2015 and the grievances and actions he had filed on behalf of a fellow inmate in 2017. Muntaqim's equal-protection claims were based on allegations that female inmates are not subject to placement in punitive units such as VSM. He also pointed out that on the same date that Payne affirmed his transfer to VSM, Payne allegedly overruled a transfer to VSM of an inmate named Christopher Crenshaw who had stabbed another inmate multiple times.

Muntaqim further alleged that he was denied due process in the decision to place him in the VSM incentive program because he was denied an appropriate appeal process in that the decision was reviewed by Payne—the official who initially affirmed the transfer decision—and not reviewed by the proper administrative officials. Muntaqim further alleged that Payne was not an impartial decision-maker due to his affirming the transfer one day before the classification commission made its decision to transfer him to VSM. Muntaqim contended

5

that Washington and Shipman were made aware of Payne's inappropriate review of his VSM placement but declined to correct the due-process violation.

Also, within his due-process argument, Muntaqim contended that the VSM program imposes an atypical and significant hardship within the correctional context in that inmates are confined to their cells for twenty-four hours, are forbidden to interact or speak with fellow inmates, are served meals in their cells, and are allowed exercise for two hours a week in an enclosed space. He alleged that the conditions at VSM and the VSM incentive program are atypical and therefore created a liberty interest protected by due process. Muntaqim alleged that transfer to VSM for assaulting a staff member deprives him of parole, that the ability to advance out of the VSM incentive program is arbitrary and indefinite, and that inmates assigned to the program have remained there for multiple years. Muntaqim stated in his complaint that as of the date the complaint was filed, he had not yet been allowed to begin participation in the incentive program since his arrival at VSM but instead had remained isolated in his cell, unable to communicate with other inmates, restricted from participating in daily exercise, and denied access to VSM guidelines regarding appeals and reintegration into the general population.

IV. *Sovereign and Statutory Immunity*

Sovereign immunity for the State of Arkansas arises from an express declaration in article 5, section 20 of the Arkansas Constitution. *Muntaqim*, 2021 Ark. 162, at 3, 628 S.W.3d at 635. A suit against the State is barred by the sovereign-immunity doctrine if a judgment for the plaintiff will operate to control the action of the State or subject the State to liability. *Id.* at 3–4, 628 S.W.3d at 635.

The doctrine of sovereign immunity is applicable to state agencies, and this court has recognized that a suit against a public official in his or her official capacity is essentially a suit against that official's agency. *Id.* at 4, 628 S.W.3d at 635. However, a claim of sovereign immunity may be surmounted if the state agency is acting illegally, and this court has long recognized that a state agency or officer may be enjoined from an action that is ultra vires. *Id.*, 628 S.W.3d at 635. The scope of the exception to sovereign immunity for unconstitutional acts or for acts that are ultra vires extends only to injunctive relief. *Id.*, 628 S.W.3d at 635.

With respect to individual state actors, in determining whether state actors are entitled to statutory immunity, we have been traditionally guided by the United States Supreme Court's analysis of qualified-immunity claims. *Id.*, 628 S.W.3d at 635. Under this analysis, immunity is precluded when a constitutional violation is asserted and if it is demonstrated that the constitutional right has been clearly established such that the official would have known that the conduct violated that clearly established right. *Id.*, 628 S.W.3d at 635. Otherwise, a state official is immune from individual-capacity suits if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge. *Id.*, 628 S.W.3d at 635. Courts evaluating a claim of immunity must determine first whether the plaintiff has alleged facts that demonstrate the deprivation of an actual constitutional right and, second, that the right was clearly established at the time of the alleged violation. *Id.*, 628 S.W.3d at 635.

The doctrine of qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To promote the second interest, qualified

immunity protects all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335 (1986).

To state a claim under § 1983, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Similarly, if a supervisor is aware of the institution's deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act. *Daniel v. Cook Cnty.*, 833 F.3d 728, 737 (7th Cir. 2016).

Muntaqim's constitutional claims for monetary damages against appellees in their official capacity are claims against the State and are therefore barred by the doctrine of sovereign immunity. Accordingly, we hold that the circuit court did not abuse its discretion in dismissing those claims. Muntaqim also seeks injunctive relief against appellees in their official capacity, and he has asserted that appellees in their individual capacities violated his constitutional rights. Therefore, we must determine whether Muntaqim pled facts relating to his constitutional claims upon which relief can be granted, which will include the consideration of whether he pled facts sufficient to demonstrate that the appellees acted "ultra vires." With regard to Muntaqim's claims against appellees in their individual capacities, we must determine whether he has alleged facts that demonstrate the deprivation of an actual constitutional right and whether that right was clearly established at the time of the alleged violation.

## V. *Retaliation*

In raising a retaliatory-transfer claim, the prisoner faces a substantial burden in attempting to prove that the actual motivating factor for his transfer was the impermissible

8

retaliation. *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993). In meeting this burden, a prisoner must prove that the transfer would not have been made "but for" the prisoner's litigation activities. *Id.*

Claims of retaliation fail if the alleged retaliatory-conduct violations were issued for the actual violation of a prison rule. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). A defendant may successfully defend a retaliatory-discipline claim by showing "some evidence" the inmate actually committed a rule violation. *Id.* Moreover, inmates do not have a constitutional right to incite other inmates to file grievances or to assist other inmates in filing lawsuits. *Rouse v. Benson*, 193 F.3d 936, 941 (8th Cir. 1999). Finally, the lack of a temporal connection between the protected activity and the alleged retaliation dispels any inference of causal connection. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893 (8th Cir. 2002)).

Muntaqim asserts that he was retaliated against for filing grievances and lawsuits for himself and other inmates. However, treating these allegations as true and viewing them in the light a most favorable to Muntaqim, he fails to state a claim for retaliation. First, he does not dispute that he struck the correctional officer but states that the assault was in response to his being shoved against the wall by another officer. On the basis of these alleged facts, it is undisputed that Muntaqim committed an actual rule violation by striking an officer. Second, there is no temporal connection between actions taken by Muntaqim in 2015 and in 2017 with respect to his transfer to VSM that took place years later in 2018. Therefore, we hold that the circuit court's dismissal of Muntaqim's retaliation claim for failure to state facts upon which relief can be granted against appellees was not an abuse of discretion.

9

## VI. *Equal Protection*

To sustain an equal-protection claim, an inmate plaintiff must allege that he was a member of a protected class, and he must show that similarly situated classes of inmates are treated differently and that this difference in treatment bears no rational relation to any legitimate penal interest. *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998). He also must show intentional or purposeful discrimination. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 733 (8th Cir. 1994).

Muntaqim fails to state facts upon which relief can be granted demonstrating that he is a member of a protected class and that similarly situated classes of inmates are treated differently. While Muntaqim alleges that an inmate named Crenshaw who violently attacked another inmate was not transferred to VSM, he failed to allege sufficient facts demonstrating that Crenshaw was a member of a similarly situated class in that Muntaqim had assaulted a correctional officer, not a fellow inmate. Muntaqim's allegation with respect to female inmates also fails because this court has found that male and female inmates are likewise not similarly situated. *Waller v. Banks*, 2013 Ark. 399, at 8 (citing *Keevan v. Smith*, 100 F.3d 644 (8th Cir. 1996)). Therefore, the circuit court did not abuse its discretion in dismissing Muntaqim's equal-protection claims against appellees.

## VII. *Due Process*

Muntaqim argues that his due-process rights were violated in the disciplinary hearing, the hearings related to his transfer to VSM, his assignment to the VSM incentive program, and the subsequent appeals of those hearings. The State argues that Muntaqim's allegations fail as a matter of law on the basis of our supreme court's holding in *Waller, supra*, that there is no

10

liberty interest protecting an inmate found guilty of physical violence against a correctional officer from transfer to the VSM or assignment to the VMS incentive program.

In *Waller*, the appellant alleged that the failure to provide him with notice or a hearing before assigning him to the VSM incentive program violated his right to due process. *Waller*, 2013 Ark. 399, at 5. Our supreme court held that the appellant must first demonstrate that he was deprived of a liberty interest when he was assigned to the program. *Id.* at 6. Evidence showed that the incentive program required inmates to participate in programming that consisted of viewing videos and answering questions about the material and was designed to rehabilitate inmates by building character, developing coping skills, and teaching socially acceptable ways of behaving. *Id.* at 5. And while the appellant alleged that inmates assigned to the program were subject to longer periods of privilege loss for disciplinary infractions than other VSM inmates, he also acknowledged that all VSM inmates, including those assigned to the incentive program, received the same treatment in other areas, including access to mail, visitation escort, phones, library, recreation, and medication. *Id.* at 5–6. The supreme court held that because the assignment to the VSM incentive program could not be considered a dramatic departure from the ordinary incidents of prison life, the appellant failed to state a deprivation of a liberty interest as necessary to claim a due-process violation based on lack of notice and a hearing. *Id.* at 6.

In contrast, the United States Supreme Court in *Wilkinson v. Austin*, 545 U.S. 209 (2005), held that an inmate placed in disciplinary segregation for over thirty days where almost all human contact is prohibited—even to the point that conversation is not permitted from cell to cell—and is allowed exercise for only one hour within a twenty-four-hour period is

11

entitled to due process before such disciplinary terms are imposed. The Supreme Court explained that incarceration in supermax was "synonymous with extreme isolation"; "every aspect of an inmate's life [was] controlled and monitored"; inmates were "deprived of almost any environmental or sensory stimuli and of almost all human contact"; exercise was permitted only indoors for one hour per day, and that all meals were taken "alone in the inmate's cell instead of in the common eating area." *Id.* at 214. The Court also noted that because inmates were confined to a supermax facility for an indefinite period, their interest in receiving meaningful procedural review was magnified. *Id.* at 224. Finally, the Court found that the assignment to supermax "disqualifie[d] an otherwise eligible inmate for parole consideration." *Id.* The Court concluded that "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Id.*

Drawing on the Supreme Court's reasoning in *Wilkinson*, the Fourth Circuit Court of Appeals construed the atypical-and-significant-hardship analysis as turning on three factors: (1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence. *Smith v. Collins*, 964 F.3d 266, 269 (4th Cir. 2020). Other federal circuit courts of appeals have concluded that excessive terms of administrative segregation give rise to further inquiry into the conditions of confinement to determine whether due process is owed. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693 (7th Cir. 2009); *see also Giano v. Selsky*, 238 F.3d 223 (2d Cir. 2001).

12

The Supreme Court in *Wilkinson* found that the conditions of confinement described above were significant and atypical and therefore created a liberty interest in avoiding assignment to such disciplinary programs. 545 U.S. at 224. Under the holding in *Wilkinson*, due process for supermax placement will be constitutionally adequate where an inmate received notice of a factual basis leading to supermax consideration, fair opportunity for rebuttal, multiple levels of review, opportunity for objections prior to final review, and a short statement of reasons for placement. *Id.* at 225–26.

Here, the conditions of confinement alleged in Muntaqim's complaint are more comparable to the conditions described in *Wilkinson* than in *Waller*. According to Muntaqim's complaint, he was assigned to the VSM incentive program in October 2018 but has remained in administrative segregation at VSM under conditions of confinement that have been found by the United States Supreme Court to be atypical and significant deprivation that is a dramatic departure from the basic conditions of confinement, i.e., he has been confined to his cell for twenty-four hours a day, is forbidden to interact or speak with fellow inmates, is served meals in his cell, and is allowed exercise for two hours a week in an enclosed space.[2] He also alleged in his complaint that his placement in the incentive program is indefinite in that there is no real opportunity for advancement within the program because all decisions regarding reintegration into the general prison population are arbitrary. *Williams v. Norris*, 277 F. App'x 647, 650 (8th Cir. 2008) (due process requires that inmates placed in segregation receive meaningful reviews). In sum, Muntaqim has made sufficient factual allegations to state a due-

---

[2]In his argument on appeal, Muntaqim states that he had been in administrative segregation for 840 days when his brief-in-chief was filed in this court.

process claim on the basis of a liberty interest in avoiding assignment to the VSM disciplinary program.

Muntaqim has likewise stated sufficient facts to state a due-process claim in that he alleged that he was denied multiple levels of review and an opportunity for objections prior to a final review by Payne. Muntaqim's allegations and the documents attached to his complaint demonstrate that the majority of Muntaqim's grievances and appeals were addressed and rejected by Payne, who had participated in the initial decision to affirm the transfer. Moreover, Muntaqim alleged that Payne initially denied that Muntaqim had a right to appeal his placement in the incentive program. Muntaqim's allegation regarding Payne's actions with respect to an inmate named Crenshaw who had stabbed another inmate multiple times also raises a question that decisions made by Payne are arbitrary in view of the violent and serious nature of Crenshaw's assault with a deadly weapon as compared to Muntaqim's assault with a closed fist. Finally, Muntaqim alleged in his complaint that Kelley refused to allow him to lodge an appeal to higher level administrative officials other than Payne, therefore denying him multiple levels of review as required to meet due-process standards outlined by the court in *Wilkinson*.

In sum, Muntaqim has alleged facts to state a claim against Payne and Kelley under § 1983 for the denial of his constitutional right to due process in assigning him and transferring him in the VSM incentive program. We reverse and remand on this point.

However, Muntaqim's complaint fails to allege sufficient factual allegations that Washington and Hosman, classification officers at ORCU; and Faust, the warden of ORCU, were individually responsible for denying him the right to object to the placement before it was summarily affirmed by Payne. Nor did Muntaqim allege that Washington, Hosman, and

14

Faust were individually responsible for denying Muntaqim an opportunity to object to the VSM assignment or that they were individually responsible for denying Muntaqim the right to multiple levels of appeal of their decision. *Reynolds*, 636 F.3d at 979. The same is true for Washington, classification officer at VSM; and Shipman, deputy warden at VSM. Muntaqim failed to state sufficient factual allegations that these officers were individually responsible for the due-process violations alleged in the complaint; therefore, we affirm the circuit court's dismissal of the due-process claims filed against them.

Finally, Muntaqim alleges that Gibson violated his due-process rights when he denied Muntaqim access to prison policies setting forth the guidelines for VSM placement. However, there is no constitutionally protected due-process interest in unfettered access to a prison grievance procedure. *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996); *Buckley v. Barlow*, 997 F.2d 494 (8th Cir. 1993). Therefore, we affirm the circuit court's finding that Muntaqim failed to state a sufficient due-process violation against Gibson.

## VIII. *Exhaustion*

The circuit court concluded that Muntaqim failed to exhaust administrative remedies in connection with his constitutional claims against Outlaw, Hosman, Faust, Washington, Shipman, and Kelley.[3] It is not necessary to address exhaustion with respect to Outlaw, Hosman, Faust, Washington, and Shipman because we affirm their dismissal from this action. However, as discussed earlier, Muntaqim has alleged facts to state a due-process claim against Kelley for her alleged failure to lodge an appeal to higher level administrative officials other

---

[3]The court found that Muntaqim did exhaust administrative remedies related to his due-process claims against Payne and Gibson.

than Payne. Therefore, we must determine whether the circuit court abused its discretion in finding that Muntaqim failed to exhaust remedies with regard to his due-process claims against Kelley.

Failure to exhaust is an affirmative defense under the Prison Litigation Reform Act (PLRA), codified at 42 U.S.C. § 1997e; and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Because exhaustion is an affirmative defense, the defendants have the burden of pleading and proving the defense. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013); *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997).

A prisoner's lack of compliance may be excused if the administrative remedies are not available, but federal courts have required a prisoner to make efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable. *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011). When a prisoner makes efforts to comply but does not succeed, whether those efforts to exhaust were sufficient under the circumstances should be analyzed. *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).

Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Similarly, while it is a question of law whether administrative remedies qualify as being "available" under 42 U.S.C. § 1997e(a), availability may sometimes turn on questions of fact. *Id.* The court will be obligated to establish the availability of an administrative remedy from a legally sufficient source before it may dismiss the prisoner's complaint. *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999).

16

Defendants must sufficiently identify what administrative remedies may be available before the issue of exhaustion may be resolved. *Minter v. Bartruff*, 939 F.3d 925, 928 (8th Cir. 2019).

Muntaqim alleges in his complaint that Payne was not the appropriate official to handle his appeal. According to Muntaqim, he reported the alleged error in the appeal process directly to Kelley. Muntaqim attached to his complaint three memos written by Kelley's office explaining that the director does not intervene in grievances, and in the last memo, Kelley's office sent Muntaqim's complaints back to Payne. Muntaqim also stated in multiple grievances attached to the complaint that Kelley had violated his right to due process. Muntaqim alleged that his complaints regarding Kelley's failure to ensure appropriate levels of appeal were not addressed. Therefore, Muntaqim stated facts sufficient to raise the issue of whether he exhausted his administrative remedies with respect to Kelley or whether he had an "available remedy" with respect to Kelley's conduct in ignoring his due-process complaints. *See Daniel*, 833 F.3d at 737 (supervisor who is aware of an institution's deliberately indifferent policy may be liable). Moreover, in asserting her affirmative defense, Kelley has not identified what administrative remedy may be available, and it is not clear from the pleadings what those remedies might be. Accordingly, we hold that the circuit court abused its discretion in finding that Muntaqim failed to exhaust his administrative remedies with regard to his due-process claims against Kelley.

IX. *Conclusion*

The circuit court did not abuse its discretion when it dismissed Muntaqim's retaliation and equal-protection claims against all appellees and when it dismissed Muntaqim's due-process claims against separate appellees Washington, Outlaw, Hosman, Faust, Shipman, and

17

Gibson. Accordingly, we affirm these findings. However, the circuit court did abuse its discretion in dismissing Muntaqim's individual- and official-capacity due-process claims against Payne and Kelley and in finding that Muntaqim failed to exhaust his administrative remedies against Kelley. We reverse and remand these findings. Additionally, we reverse the circuit court's finding that Muntaqim's complaint constituted a strike pursuant to Arkansas Code Annotated section 16-68-607.

Affirmed in part; reversed and remanded in part.

KLAPPENBACH and BROWN, JJ., agree.

*Malik Muntaqim*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Sammie P. Strange, Jr.*, Ass't Att'y Gen., for appellee.