Cite as 2024 Ark. App. 456

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-22-655

| | |
|---|---|
| MALIK MUNTAQIM, ADC NO. 088633<br>APPELLANT<br><br>V.<br><br>JAMES GIBSON, WARDEN, VARNER UNIT, ARKANSAS DIVISION OF CORRECTION; MARSHALL D. REED, CHIEF DEPUTY DIRECTOR, ARKANSAS DIVISION OF CORRECTION; AND LAURA MCEWEN, MAILROOM SUPERVISOR, VARNER UNIT, ARKANSAS DIVISION OF CORRECTION<br>APPELLEES | Opinion Delivered September 25, 2024<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. 35CV-21-865]<br><br>HONORABLE JODI RAINES DENNIS, JUDGE<br><br><br><br>AFFIRMED AS MODIFIED |

## WENDY SCHOLTENS WOOD, Judge

Appellant Malik Muntaqim appeals from the Jefferson County Circuit Court's order dismissing his pro se civil-rights complaint against three employees of the Arkansas Division of Correction (ADC): James Gibson, warden of Varner Supermax Unit (VSM); Laura McEwen, VSM mailroom supervisor; and Marshall Reed, ADC chief deputy director, in their official and individual capacities. Muntaqim filed the action pursuant to 42 U.S.C. § 1983, and the Arkansas Civil Rights Act, codified at Arkansas Code Annotated sections 16-123-101 to -108 (Repl. 2016 & Supp. 2021), and alleged that appellees violated his

constitutional rights to free exercise of religion, free speech, due process, and equal protection and his rights under the Religious Land Use Institutionalized Persons Act (RLUIPA). Appellees filed a motion to dismiss, which was granted by the circuit court. On appeal, Muntaqim argues that the circuit court abused its discretion in dismissing his complaint. We affirm.

## I. *Standard of Review*

When reviewing a circuit court's decision on a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Muntaqim v. Kelley*, 2022 Ark. App. 76, at 2, 641 S.W.3d 35, 40. All reasonable inferences are resolved in favor of the complaint, and the pleadings are liberally construed. *Id.*, 641 S.W.3d at 40. Under our fact-pleading requirement, a complaint must state facts, not mere conclusions, to entitle the pleader to relief. *Id.*, 641 S.W.3d at 40; *see also* Ark. R. Civ. P. 8(a) (providing that "[a] pleading which sets forth a claim for relief . . . shall contain (1) a statement in ordinary and concise language of facts showing that the court has jurisdiction of the claim . . . and that the pleader is entitled to relief[]"). We review a circuit court's decision to grant a motion to dismiss for abuse of discretion. *Muntaqim*, 2022 Ark. App. 76, at 2, 641 S.W.3d at 40. But whether a party is immune from suit is purely a question of law, which we review de novo. *Banks v. Jones*, 2019 Ark. 204, at 3, 575 S.W.3d 111, 114.

## II. *Procedural and Factual Background*

2

From a review of the complaint and the exhibits attached and incorporated into the complaint, Muntaqim's civil-rights action is based on the following alleged facts. Muntaqim is a member of a branch of Islam known as the Nation of Islam (NOI). At times relevant to this appeal, Muntaqim was housed at the VSM. In February 2021, Muntaqim ordered a copy of the Quran, "the primary scripture for Muslims of the Islamic religion," from a free world bookstore. An ADC return-mail notice dated June 5, 2021, indicates that the package from "Islamic BookStore" had to be returned because the Quran was too large.

On June 8, Muntaqim filed a grievance "against the mailroom and whomever is responsible for the . . . systemic racism, religious bigotry, and for not following well-established constitutional due process law, equal protection law, retaliation, and ADC regulations and directives, specifically AD 20-04 Publications." Muntaqim alleged that the mailroom supervisor's failure to send the oversized Quran to the ADC publication-review committee deprived Muntaqim of the right to pursue an internal appeal of the decision rejecting the Quran. He further alleged that the mailroom supervisor's actions were motivated by retaliation for Muntaqim's "lawsuits and grievances on the mailroom and warden." On June 16, the warden, Gibson, responded to the grievance as follows:

> On 4/23/2021, you were sent correspondence from my office in regard to the Quran. It was denied due to the size of it not being within policy. One can be ordered that is within policy and you can have it. I find no merit to your grievance.

Muntaqim appealed, and on August 16, the ADC director affirmed Gibson's decision, finding that the "Quran was denied according to policy."

3

In May 2021, the ADC publication-review committee denied Muntaqim access to a book titled *Medical Apartheid* following its determination that the publication contained "racial content" on "pages 345 and 347." Muntaqim appealed to the central office, and the central office affirmed the committee's decision on August 11.

On June 25, Muntaqim filed a grievance also alleging that the mailroom violated his due-process rights by failing to notify him both when the *Medical Apartheid* book arrived in the mailroom and that the book was being withheld pending review by the publication-review committee. He also complained that he did not receive notice of the committee's May 28 or 29 decision to deny the publication until June 25. This grievance was rejected as a nongrievable publication matter. Muntaqim appealed, and the ADC director denied the appeal as untimely on August 9.

In June 2021, the ADC publication-review committee denied Muntaqim access to an issue of the *Final Call*, a NOI weekly periodical, finding that the publication contained material "encouraging and/or instructing of criminal activity" on "pages 5, 12, and 34." A document reporting this decision by the committee shows that Muntaqim elected to appeal this decision.

On June 8, Muntaqim filed a grievance against the mailroom supervisor, the chaplain, and the warden, alleging "systemic racism and religious discrimination" and violations of due process and equal protection for withholding three issues (vol. 40, nos. 32, 34, and 35) of the *Final Call*. Gibson responded to the grievance, noting that Muntaqim had been notified on June 24 that one issue of the *Final Call* (vol. 40, no. 32) had been sent to the

4

publication-review committee for a decision. Muntaqim appealed, and on August 9, the ADC director upheld Gibson's decision, stating as follows:

> According to staff Vol. 40 #32 is the only Final Call that has been received as of 6/24/2021. I find no evidence to support your allegation of being religiously discriminated against. Therefore, I find no merit in your appeal.

Muntaqim's complaint alleges that the publication-review committee denied two additional weekly issues of the *Final Call* on the basis that the publications contained content relating to "discrimination/inflammatory attitude."

On January 26, 2022, Muntaqim filed his civil-rights complaint against appellees in their official and individual capacities. In his complaint, Muntaqim claimed that appellees violated (1) his First Amendment right to free exercise of religion and his rights under RLUIPA when they denied him access to the Quran and to the *Final Call*; (2) his First Amendment right to freedom of speech when they denied him access to the book *Medical Apartheid* in retaliation for the many grievances and lawsuits he has filed against appellees and other ADC officials; (3) his Fourteenth Amendment right to due process when they failed to adhere to ADC publications and mailroom policies, rules, and regulations; and (4) his Fourteenth Amendment right to equal protection by treating him differently due to his race and religious belief with respect to publications and mail. Muntaqim requested both monetary and injunctive relief.

On March 11, appellees moved to dismiss. On August 16, the circuit court entered an order dismissing Muntaqim's complaint with prejudice, ruling as follows:

Plaintiff filed this action alleging that the defendants (ADC) have violated his constitutional rights; the establishment clause; his RLUIPA rights, have denied him due process and equal protection, and have retaliated against him for exercising these rights.

Plaintiff seeks an order directing the ADC to revise its publication review policy. He asks for independent judicial review of the ADC's decisions that have denied him possession of various publications, including publications by the Nation of Islam. He seeks compensatory and punitive damages, and injunctive relief against the defendants.

Previous complaints filed by plaintiff that have made similar claims have been rejected by the Arkansas Supreme Court. The Court has ruled there is a rational connection between the ADC's incoming mail policy and the ADC's legitimate governmental interest in prison safety. Plaintiff has not alleged violations not previously litigated. *Muntaqim v. Payne*, 2021 Ark. 162 (2021); *Muntaqim v. Lay*, 2019 Ark. 203 (2019).

Plaintiff's official capacity claims are dismissed because state employees sued for money damages and injunctive relief in their official capacities are entitled to sovereign immunity and state employees sued in their individual are entitled to qualified immunity.

Muntaqim makes broad allegations that his due process rights have been violated by the ADC when they refuse him possession of literature. He includes an unsupported allegation that the ADC refuses to grant him possession of literature as retaliation for the complaints he files within the department and his civil lawsuits.

After a review of the defendants' motion to dismiss and consideration of the supporting arguments, the motion to dismiss is granted.

The circuit court also found that dismissal constituted a strike pursuant to Arkansas Code Annotated section 16-68-607 (Supp. 2021).

III. *Sovereign and Qualified Immunity*

Sovereign immunity for the State of Arkansas arises from an express declaration in article 5, section 20 of the Arkansas Constitution: "The State of Arkansas shall never be

6

made a defendant in any of her courts." *Muntaqim*, 2022 Ark. App. 76, at 6, 641 S.W.3d at 42. Because sovereign immunity is jurisdictional immunity from suit, jurisdiction must be determined entirely from the pleadings. *Id*. at 2, 641 S.W.3d at 40. When the pleadings reveal that the action is one against the State, the circuit court acquires no jurisdiction. *Swanigan v. Ark. Dep't of Corr.*, 2014 Ark. 196, at 2. In determining whether sovereign immunity applies, the decisive question is whether a judgment for the plaintiff will operate to control the action of the State or subject the State to liability. *Fegans v. Norris*, 351 Ark. 200, 206, 89 S.W.3d 919, 924 (2002) (per curiam). If so, the suit is one against the State and is barred by the doctrine of sovereign immunity. *Id.*, 89 S.W.3d at 924.

The doctrine of sovereign immunity is applicable to state agencies and state employees sued in their official capacities. *Muntaqim*, 2022 Ark. App. 76, at 7, 641 S.W.3d at 42. This is because a suit against a state employee in his or her official capacity is essentially a suit against that official's agency and, as such, is no different than a suit against the State itself. *Id*. at 6, 641 S.W.3d at 42.  A claim of sovereign immunity may be surmounted, however, if the state agency is acting illegally, and this court has long recognized that a state agency or officer may be enjoined from an action that is ultra vires. *Id*. at 7, 641 S.W.3d at 42. But the scope of the exception to sovereign immunity for unconstitutional acts or for acts that are ultra vires extends only to injunctive relief.  *Id.*, 641 S.W.3d at 42.

With respect to individual state actors, the statutory immunity provided under state law is similar to the immunity provided by the United States Supreme Court for federal civil-rights claims. *See Fegans*, 351 Ark. at 207, 89 S.W.3d at 924 (noting that Ark. Code Ann. §

7

19-10-305(a) provides state employees with statutory immunity from civil liability for nonmalicious acts occurring within the course of their employment). In determining whether state actors are entitled to statutory immunity, we have traditionally been guided by the United States Supreme Court's analysis of qualified-immunity claims. *Muntaqim*, 2022 Ark. App. 76, at 7, 641 S.W.3d at 42. Under this analysis, a state official is entitled to qualified immunity unless the plaintiff has alleged facts that demonstrate (1) the deprivation of an actual constitutional right and (2) that the right was clearly established at the time of the alleged violation such that a reasonable official would have known that his actions were unlawful. *Id.*, 641 S.W.3d at 42. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Muntaqim's claims for monetary damages against appellees in their official capacities are claims against the State and are therefore barred by the doctrine of sovereign immunity. Accordingly, we hold that the circuit court properly dismissed those claims. Muntaqim also seeks injunctive relief against appellees in their official capacities, and he has asserted that appellees, in their individual capacities, violated his constitutional rights. For the reasons set forth below, Muntaqim's claims for injunctive relief against appellees in their official capacities also are barred by sovereign immunity because he failed to plead facts sufficient to demonstrate that appellees acted "ultra vires." In addition, appellees are entitled to qualified immunity in their individual capacities because Muntaqim failed to plead facts sufficient to

demonstrate the deprivation of a constitutional right. Accordingly, we hold that the circuit court did not err in dismissing Muntaqim's individual-capacity claims.

IV. *Free Exercise of Religion and RLUIPA*

Muntaqim claims that appellees violated his free-exercise rights under the First Amendment and under RLUIPA when they withheld a copy of the Quran and one to three issues of the *Final Call*, a weekly NOI publication. The facts alleged in Muntaqim's complaint show that the Quran was withheld not because of its contents but because it exceeded the physical size limit of books that inmates are allowed to possess pursuant to ADC policy. The *Final Call* issues were withheld after they were reviewed by the ADC publication-review committee and found to contain content relating to "encouraging and/or instructing of criminal activity" or "discrimination/inflammatory attitude."

When a prison regulation or policy impinges on an inmate's sincerely held religious beliefs, the regulation is constitutionally valid if it is reasonably related to penological interests. *Muntaqim*, 2021 Ark. 162, at 13, 628 S.W.3d at 639. ADC's policy limiting the physical size of books inmates are permitted to possess serves a legitimate penological interest to protect prison safety and security of both its officers and inmates—and particularly so in a maximum-security unit like VSM. Muntaqim, moreover, on more than one occasion, has challenged ADC policy with respect to incoming NOI publications. *See id.* at 12, 628 S.W.3d at 639 (holding that ADC's actions in withholding several issues of the *Final Call* found to contain racist and inflammatory content were based on a legitimate penological interest); *see also Muntaqim v. Lay*, 2019 Ark. 203, 575 S.W.3d 542 (affirming denial of Muntaqim's

9

request to enjoin ADC mailroom policy to ensure he received all NOI materials regardless of content). In those cases, the supreme court held that because the ADC publications and mail policy is designed to promote the legitimate penological interests of prison safety and security and requires individualized review of all incoming mail, the policy was not unconstitutional and subject to an injunction. *Muntaqim*, 2021 Ark. 162, at 13, 628 S.W.3d at 639. Here, as in Muntaqim's prior cases, appellees' actions were based on legitimate penological interests and an individualized review of the incoming mail.

The Eighth Circuit Court of Appeals and other federal circuits have applied the standards set forth by the United States Supreme Court regarding the free exercise of an inmate's religious practices in a more restrictive manner. *Muntaqim*, 2021 Ark. 162, at 13, 628 S.W.3d at 639 (citing *Mbonyunkiza v. Beasley*, 956 F.3d 1048 (8th Cir. 2020)). Under these standards, an analysis of penological interest with respect to prison regulations that limit religious practices is not warranted unless the inmate first shows that the challenged regulation "substantially burdens" his sincerely held belief. *Id.*, 628 S.W.3d at 639. To substantially burden an inmate's free exercise of religion, a prison regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion. *Id.* at 13–14, 628 S.W.3d at 640.

Under these standards, ADC's policies regarding book size, publications, and mail did not "substantially burden" Muntaqim's free exercise of religion. Muntaqim was free to

10

obtain a smaller Quran, and he did not allege a total ban on all NOI materials. Rather, he alleged that he was denied, at most, three issues of the *Final Call*. *See id.* (holding allegations that Muntaqim was denied fifteen issues of the *Final Call* failed to demonstrate substantial burden on free exercise of religion).

The "substantially burdens" standard applied by the Eighth Circuit is partially based on the language incorporated in RLUIPA, which provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government demonstrates that the burden "is the least restrictive means of furthering [a] compelling governmental interest." *Id.* at 14, 628 S.W.3d at 640 (citing 42 U.S.C. § 2000cc-1(a)). Under RLUIPA, a substantial burden exists if the prison policy significantly inhibits or constrains religious conduct, meaningfully curtails an inmate's ability to express adherence to his faith, or denies an inmate a reasonable opportunity to engage in fundamental religious activities. *Id.* at 15, 628 S.W.3d at 640. Although the prison must permit a reasonable opportunity for an inmate to engage in religious activities, it need not provide unlimited opportunities to do so. *Id.*, 628 S.W.3d at 640. "RLUIPA does not require the prison to permit an inmate to possess every tangential item of property that could aid the inmate's religious exercise or learning." *Van Wyhe v. Reisch*, 581 F.3d 639, 657 (8th Cir. 2009).

Again, Muntaqim did not allege that he was denied access to any and every copy of the Quran, but only one that exceeded the acceptable book size at VSM. He also did not allege that he was denied total access to the *Final Call*, but only one to three issues of the

weekly publication. ADC was not required to provide Muntaqim with unlimited access to the *Final Call* or an oversized copy of the Quran under either state or federal constitutional law or under RLUIPA. Muntaqim's claims that appellees restricted access to some but not all NOI religious literature did not state sufficient facts that appellees placed a substantial burden on the exercise of his religious practices. *Muntaqim*, 2021 Ark. 162, at 15, 628 S.W.3d at 640. The circuit court, therefore, did not abuse its discretion in dismissing Muntaqim's First Amendment free-exercise and RLUIPA claims.

V. *Freedom of Speech*

Muntaqim claims that appellees denied him access to a book titled *Medical Apartheid* in retaliation for his attempts to seek redress by filing grievances and complaints against appellees and other ADC officials. To prevail on a claim for retaliation in violation of the First Amendment, a prisoner must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). The ordinary-firmness test is designed to weed out trivial matters from those deserving the time of the court as real and substantial violations of the First Amendment. *Muntaqim*, 2021 Ark. 162, at 8, 628 S.W.3d at 637. Here, the facts alleged in Muntaqim's complaint demonstrate that the alleged retaliatory actions of appellees were *not* of such a nature as to silence Muntaqim. Muntaqim continued to use the ADC grievance procedure and file lawsuits both before and after the retaliatory actions allegedly took place.

12

Muntaqim also failed to sufficiently plead facts to support any retaliatory motive for withholding publications from him. *See Wilson v. Northcutt*, 441 F.3d 586, 593 (8th Cir. 2006) (holding appellee's "belief" that individual acted from retaliatory motive insufficient to support retaliation claim). Muntaqim's allegations that appellees conspired to retaliate against him are wholly conclusory and based on his own speculation as to appellees' motives. Although a plaintiff's allegations are treated as true, we do not treat the plaintiff's theories, speculations, or statutory interpretations as such. *Null v. Ark. Parole Bd.*, 2019 Ark. 50, at 2, 567 S.W.3d 482, 483. Allegations of retaliation that are speculative and conclusory are always properly dismissed. *Muntaqim*, 2021 Ark. 162, at 8, 628 S.W.3d at 637; *see also Banks v. Jones*, 2019 Ark. 204, 575 S.W.3d 111 (bare allegations and conclusory statements will not establish a constitutional claim). Accordingly, we hold that the circuit court did not abuse its discretion in dismissing Muntaqim's free-speech retaliation claim.

## VI. *Due Process*

Muntaqim claims that appellees violated his right to due process by failing to adhere to ADC publications and mail policies when they withheld both religious and nonreligious publications. To maintain an actionable procedural due-process claim, an inmate must show that he has been deprived of some constitutionally protected liberty or property interest. *Muntaqim*, 2021 Ark. 162, at 9, 628 S.W.3d at 637. Prison policies and procedures, like the ones Muntaqim complains of here, however, do not create a liberty interest to which due process can attach. *Id.*, 628 S.W.3d at 637–38. Rather, any alleged liberty interest must be

13

an interest in the nature of the prisoner's confinement, not an interest in the procedures by which the State believes it can best determine how a prisoner should be confined. *Id.* at 10, 628 S.W.3d at 638; *see also Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) (there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations). Because Muntaqim's claims do not allege the deprivation of any constitutionally protected liberty or property interest, we hold that the circuit court did not abuse its discretion in dismissing the claims.

VII. *Equal Protection*

Muntaqim alleged in his complaint that appellees deprived him of equal protection when they allowed members of other religious groups to receive their publications but scrutinized and withheld his religious publications. To state a viable equal-protection claim, an inmate must identify the characteristics of the class to which he claims to be similarly situated and present some evidence that other groups within the class were not also restricted in similar ways. *Muntaqim*, 2021 Ark. 162, at 11, 628 S.W.3d at 638 (citing *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979 (8th Cir. 2004)). If the inmate presents no facts to support the claim that valid prison restrictions were applied unequally, his equal-protection claims fail. *Id.*, 628 S.W.3d at 638.

Muntaqim failed to state facts in his complaint identifying the characteristics of any similarly situated class or that any class received more favorable treatment with respect to receiving publications. Instead, as appellees point out, Muntaqim argues for the first time on appeal that similarly situated inmates in VSM ordered books that were also determined to

14

be "too large," but unlike him, those inmates were given an opportunity to appeal to the ADC's publication-review committee. We will not address new arguments raised for the first time on appeal nor will we consider factual substantiation added to bolster the allegations made in an appellant's complaint. *Hall v. State*, 2018 Ark. 319, at 3, 558 S.W.3d 867, 869. Because the claims that Muntaqim alleged in his complaint were wholly conclusory and lacked factual support, the circuit court did not abuse its discretion in dismissing them.

## VIII. *Conclusion*

Because Muntaqim failed to state sufficient facts to allege a deprivation of an actual constitutional right and otherwise failed to demonstrate that appellees acted "ultra vires," appellees are immune from liability. Accordingly, we hold that the circuit court did not abuse its discretion when it dismissed Muntaqim's complaint. However, we agree with Muntaqim that the dismissal should be without prejudice. *See Duggar v. City of Springdale*, 2020 Ark. App. 220, at 18, 599 S.W.3d 672, 686 (noting that when a complaint is dismissed under Rule 12(b)(6) for failure to state facts upon which relief can be granted, the dismissal should be without prejudice and modifying dismissal with prejudice to dismissal without prejudice); *see also Malone v. Trans-States Lines, Inc.*, 325 Ark. 383, 926 S.W.2d 659 (1996) (same). Accordingly, the circuit court's order of dismissal is modified to reflect that the dismissal is without prejudice.

Affirmed as modified.

BARRETT and HIXSON, JJ., agree.

*Malik Muntaqim*, pro se appellant.

15

*Tim Griffin*, Att'y Gen., by: *Britt Johnson*, Ass't Att'y Gen., for appellee.