Circ. 10/10/2024

Cite as 2024 Ark. App. 500
# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-23-332

EDWARD IVAN PETERS; JENNIFER ANN STARK; AND JASP REAL ESTATE LLC

APPELLANTS

V.

LISA WOODS, INDIVIDUALLY AND IN HER CAPACITY AS TRUSTEE OF THE PETERS FAMILY LIVING TRUST

APPELLEE

**Opinion Delivered** October 23, 2024

APPEAL FROM THE BENTON COUNTY CIRCUIT COURT
[NO. 04PR-19-356]

HONORABLE CHRISTINE HORWART, JUDGE

AFFIRMED IN PART; DISMISSED IN PART

## BRANDON J. HARRISON, Chief Judge

This is an appeal from a judgment entered against Ed Peters, Jennifer Stark, and JASP Real Estate LLC ("Ed & Co.") on a third-party complaint Lisa Woods (Ed's sister) filed individually and as trustee of the Peters Family Living Trust (the "Peters Trust" or just "trust") to recover diverted trust assets and stop further dissipation. The third-party complaint opened a second stage in litigation that began with a suit Zoran Peters (Ed and Lisa's father) filed against Lisa in May 2019. The first stage is described in our opinion today in the companion case, CV-22-46, *Peters v. Woods*, 2024 Ark. App. 499, ___ S.W.3d ___; it ended when the circuit court struck Zoran's pleadings and entered judgment by default as a sanction for contempt and discovery noncompliance. The sanctions order removed Zoran as trustee of the Peters Trust, confirmed Lisa as sole trustee, and voided trust

amendments and other instruments. Zoran appealed it in the companion case, *Peters*, *supra*. We dismiss that appeal because the record was not timely lodged.

The sanctions order put Lisa in the driver's seat. But she encountered the same roadblock: Ed & Co. were no more willing to comply with her discovery requests, or the court's orders, than Zoran had been. More than a year after the circuit court ordered them to provide an accounting and after three separate compliance deadlines had passed, the court found that "no accounting, discovery responses or supporting documents ha[d] been produced." The court struck their answer and entered a default on liability. Later, it awarded more than $5 million in compensatory and punitive damages after what Ed & Co. call a "sham trial," which they declined to attend.

On appeal, Ed & Co. argue the circuit court lost all jurisdiction in January 2022 when Zoran lodged the record in his appeal. We affirm.

I.

The facts fueling Lisa's third-party complaint are detailed in the companion appeal, CV-22-46. We won't repeat many. Briefly, Zoran, a settlor and trustee of the Peters Trust was alive but living in Florida—where Ed and Jennifer live and where Jennifer incorporated JASP Real Estate LLC. Zoran filed a trust-related suit against Lisa, who had been—and would contend she still was—his co-trustee. Lisa sued Zoran back. Lisa's suit sought to restore the favorable original state of the Peters Trust, which made her the sole beneficiary when her parents died. She detailed a history of Ed's financial abuse of their parents along with recent conduct supporting her contention that Zoran's actions since 4 April 2018 were the product of Ed's coercion and undue influence and that both Zoran and his wife, Sally,

2

had lacked capacity at important times. She sought (from Zoran) an accounting of trust-related transactions since 2018. Zoran never provided one. When Lisa sought (from Zoran) Ed's physical address, Zoran at first provided only a phone number.

In May 2019, Sally died. Some serious writing was on Zoran's health wall as well. By March 2021, both his legs had been amputated, and he was receiving dialysis three times a week. He spent much of 2020 in and out of hospitals. He has since died.

After several hearings, and almost ten months, the circuit court found Zoran had refused to comply with court orders to properly answer basic discovery, such as Lisa's request to provide an address for Ed, whom Zoran had listed as a potential witness and a person who helped prepare his interrogatory responses. Later, Zoran's withdrawing counsel identified Ed as his agent. The circuit court would eventually find, after a trial that is not in the record, that Ed had been controlling Zoran's litigation all along. Whether Zoran was Zoran, or Ed speaking from behind the curtain while pulling levers, no accounting was provided.

Despite this, through subpoenas and public records, Lisa identified at least $1 million in transfers sourced in trust property that had apparently been diverted to Ed, Jennifer, Jennifer's mother, or JASP Real Estate. She filed a third-party complaint demanding the return of those assets under several legal theories. She sought (and received) a temporary restraining order, then a preliminary injunction, prohibiting Zoran or Ed & Co. from exercising further control over property traceable to the trust. The 14 July 2021 preliminary injunction order directed Ed & Co. to provide, within ten days, essentially the same accounting the court had ordered from Zoran.

Instead of complying, Ed & Co. filed their first notice of removal to the United States District Court for the Western District of Arkansas six days later, attaching (among other filings) the July 14 order. Zoran promptly amended his notice of appeal to appeal from the July 14 order too—though, as we discuss in Zoran's case, the circuit court proceedings were *coram non judice*, "not before a judge," at the time.[1] Ed & Co. did not file their first notice of appeal from the July 14 order until 15 February 2023, more than a year later.

The federal district court remanded because it construed *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435 (2019), to hold that only an original defendant—not a third-party defendant—could remove to federal court. But it noted its concern "that [Ed & Co.] may be forum shopping after an unfavorable decision and attempting to frustrate the state court proceedings against them."

Meanwhile, Lisa had undertaken a marathon effort, in both state and federal courts, to obtain good service of process on Ed & Co., whose shared address—the one Zoran had given—turned out to be a post-office box in a UPS store. After an attempt to serve them there by certified mail, restricted delivery, in June 2021, the green cards came back unsigned. In November 2021, counsel sent process by certified mail, restricted delivery and first-class mail to all defendants at the last four known addresses for any of them. The three green cards for mail sent to the post-office box came back signed "Joe Biden" in the same hand. Ed & Co. filed an answer December 2021, objecting to insufficiency of service.

---

[1]We do not decide whether this was effective to appeal from the preliminary injunction order; the record was not timely either way.

A month later, Lisa sent a letter through counsel asking that Ed & Co. comply with the 14 July 2021 order to provide an accounting and respond to discovery requests served months earlier. Otherwise, Lisa would have no choice but to move for contempt sanctions for violating that order and move to compel responses to the discovery requests. Through counsel, Ed & Co. responded that the court lacked personal jurisdiction over them, and the threat to hold them in compliance "is therefore meaningless." By March 2022, there had been no progress. So Lisa moved to hold them in contempt and to compel discovery. On the court-threats-are-meaningless point, she supplemented the motion July 6 with a June filing in parallel Florida state-court litigation in which Ed & Co. had moved for a stay, partly because they had been properly served in Arkansas.

Ed & Co. conceded service.

But they saw another jurisdiction problem (appellate vs. circuit)—and a jurisdiction *opportunity* (federal vs. state). At a July 2022 hearing on various motions, including Lisa's, Ed & Co. argued that while Zoran's appeal was pending, the court lacked subject-matter jurisdiction over the whole case. This must be true, they urged, because they had removed the case believing their case was separate from Zoran's, and the federal court had remanded because it was not. If their case were severed, on the other hand, Zoran's could remain stalled in circuit court until the appeal was decided, and Ed & Co. could again remove to federal court, where they freely said they would rather be.

The circuit court observed that "Mr. Edward Peters and company have done everything possible to frustrate the process. Everything." (This does not appear to be hyperbole.) It ruled that it would separate the third-party complaint by severance, but took

5

Lisa's motion under advisement.  After a follow-up hearing, it entered two orders.  One "grant[ed] severance of the claims raised in the third-party complaint" for separate trial.  The other ordered Ed & Co. to "fully and completely comply" with previous orders, "including specifically its July 14, 2021, order granting the motion for preliminary injunction in this case," and to "fully respond" to requests for production served in September 2021.  The deadline was 5:00 p.m. on 4 August 2022.  The court held the rest of Lisa's motion in abeyance so it could assess their compliance.

Four minutes before the August 4 deadline, counsel for Ed & Co. sent Lisa's counsel the following e-mail:

> Pursuant to ARCP 34(a) and the July 25, 2022 Order, the responsive materials are available for inspection at the following address:
>
> Henderson, Franklin, Starnes & Holt, P.A.
> 3451 Bonita Bay Blvd. Suite 206
> Bonita Springs, FL 34134

By lunch the next day, while the hornets were swarming from that kick, Ed & Co. had removed again to federal court.  They lasted about a month there.  The court remanded again September 7 because the case was removed too late.

Lisa renewed her motion for contempt and sanctions.  The circuit judge who had been assigned to the case recused himself sua sponte October 16.  At a hearing before the newly assigned judge, more than fifteen months after Ed & Co. were ordered to provide an accounting of transactions from the trust, their counsel stated:

> They are not going to get discovery, but they can go get their papers.  If they want to go hire a forensic accountant to determine where all the money went, that's on them.  There are no rules of procedure that order an accounting before the final judgment.  No trial, no accounting.

6

The circuit court saw it differently: No accounting?  Then no trial.  It entered an order holding Ed & Co. in default as a sanction for discovery noncompliance and contempt.

II.

Ed & Co. argue the circuit court lost jurisdiction to this court when Zoran lodged a partial record in his appeal, so the judgment against them is void.  True, the caselaw did not give a definitive answer when Ed & Co. needed it.  But we conclude they read too broadly the statement that the circuit court loses jurisdiction of "the parties and subject matter" at issue and loses jurisdiction "to act further in the matter" when an appeal is lodged.  *E.g.*, *Motal v. Doe*, 2024 Ark. App. 162, at 3, 686 S.W.3d 558, 560.

The source of the "parties and subject matter" formulation seems to be *Myers v. Yingling*, 369 Ark. 87, 251 S.W.3d 287 (2007), an appeal from an order determining a real property boundary.  The order did not include a legal description.  It needed one.  *Petrus v. Nature Conservancy*, 330 Ark. 722, 957 S.W.2d 688 (1997).  After the record was lodged, the circuit court entered a new order that added one.  Myers appealed it too.  The supreme court held the first order was not final because it lacked a legal description, and the second was void because the circuit court lost jurisdiction to "act further" when the appeal was lodged.[2]

---

[2]*Id*. at 89, 251 S.W.3d at 290.  Consistent with that holding, we have held that the circuit court loses jurisdiction to cure other finality defects in an order on appeal.  *E.g.*, *Jackson v. IberiaBank*, 2022 Ark. App. 94 (holding circuit court's order dismissing a pending claim that spoiled Arkansas Rule of Appellate Procedure–Civil 2(a)(1) finality of an order on appeal was void); *Lancaster v. Rogers Constr., Inc.*, 2020 Ark. App. 514, 612 S.W.3d 772 (same for curative order entered after finality-dismissal opinion but before mandate).

The "matter in controversy" in the *Myers* formulation is the determination of law and fact that is on appeal. If it is a judgment that determines the school-funding system is unconstitutional—in a certified class action that includes "students and parents of students in all school districts"—what is "intertwined with [the litigation on appeal,]" and removed from the circuit courts' jurisdiction, can be a lot of issues for a lot of people. *See James v. Williams*, 372 Ark. 82, 88, 270 S.W.3d 855, 859 (2008).

To "act further," in the *Myers* formulation, is to meddle with that determination. This is why the supreme court specified in *Bleidt v. 555, Inc.*, that the loss of jurisdiction "applies only to matters necessarily or directly involved in the matter under review." 253 Ark. 348, 350, 485 S.W.2d 721, 723 (1972). An appeal from an order appointing a receiver stops the circuit court from rethinking the appointment. *Fewell v. Pickens*, 346 Ark. 246, 257–58, 57 S.W.3d 144, 151–52 (2001). But it does not stop the receivership proceedings, though any later appeal would "relate to the entire pending receivership and liquidation" in some sense. *Id.* at 258, 57 S.W.3d at 151. The question is whether "allowing the trial court to go forward . . . affects the pending appeal of the challenge to the appointment of the receiver." *Id.* at 258, 57 S.W.3d at 151–52. The order reviewed in the later *Fewell* appeal did not affect the appeal of the earlier determination that a receiver should be appointed.

The cases cited in *Myers* itself illustrate that somewhat narrow focus. Both *Gore v. Heartland Community Bank*, 356 Ark. 665, 158 S.W.3d 123 (2004), and *Davie v. Smoot*, 202 Ark. 294, 150 S.W.2d 50 (1941), involved an action the lower court took after the record was lodged that added to the record material that was relevant to the determination on

8

appeal. In each case, the supreme court held that the lower court was correcting the record to accurately reflect the case's procedural (historical) course.

When an appeal is lodged from an order determining an issue of law or fact that is necessary to the judgment, the circuit court loses jurisdiction to amend or finalize the determination, *State ex rel. 93rd Gen. Assembly v. McClane*, 2023 Ark. 3, 657 S.W.3d 872; *Vanderpool v. Fid. & Cas. Ins. Co.*, 327 Ark. 407, 939 S.W.2d 280 (1997), or withdraw the issue by granting a nonsuit of the claim involved. *Box v. J.B. Hunt Transp., Inc.*, 2019 Ark. App. 334, 578 S.W.3d 719. But at least in an interlocutory appeal under Rule 2(a)(2) through (13), we conclude the circuit court does not lose jurisdiction to conduct proceedings that merely adopt or depend on the earlier determination: whether to go forward with those proceedings—or stay them instead—is a matter of circuit court discretion and efficiency, not jurisdiction.

First, though our supreme court declined to adopt the generic "collateral order" test for whether an order is appealable before final judgment, *Herron v. Jones*, 276 Ark. 493, 496, 637 S.W.2d 569, 571 (1982), most orders that "may be appealed" under Rule 2(a)(2) through (13) are *collateral* in the same sense: they determine issues other than the merit of the parties' claims. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949). In *Cohen*, the Supreme Court of the United States held that an order denying a motion to require a bond was a "final order" under 28 U.S.C. § 1291 because it was "a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." 337 U.S. at 546–47. Our supreme court applied a similar collateralness test when it held the circuit court could hear a motion for attorney fees after

a judgment that was not appealed became final. *Marsh & McLennan of Ark. v. Herget*, 321 Ark. 180, 900 S.W.2d 195 (1995). Similarly, it held that a pending motion for sanctions under Arkansas Rule of Civil Procedure 11 was a collateral matter that did not spoil finality in a merits appeal. *Spring Creek Living Ctr. v. Sarrett*, 318 Ark. 173, 175, 883 S.W.2d 820, 821 (1994). The court cited *Cooter & Gell v. Hartmarx Corp.*, where the Supreme Court held that the district court could impose Rule 11 sanctions despite a nonsuit because, like an order imposing attorney's fees or contempt sanctions, a Rule 11 sanction "requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." 496 U.S. 384, 396 (1990). Of course, similar sanctions can be appealed under Rule 2(a). That is some reason to assume the supreme court did not intend interlocutory appeals inevitably to stop the circuit court proceedings.

Second, the supreme court held in *Fewell* that the circuit court had jurisdiction to enter the later receivership order in part because the statute that made it appealable "anticipated that appeals would arise piecemeal from orders issued by the trial court." 346 Ark. at 256, 57 S.W.3d at 150. But as the supreme court interpreted Rule 2 in *In re Stinnett*, Rule 2 implies the same anticipation of piecemeal appeals. 2011 Ark. 278, at 7, 383 S.W.3d 357, 361; *see also Halbrook v. Roberson*, 2023 Ark. App. 202, 665 S.W.3d 268 (discussing interplay between Arkansas Rules of Appellate Procedure and appeal-related provisions in Probate Code). Presumably, the Arkansas Supreme Court would still construe the Arkansas Rules of Appellate Procedure to avoid the possibility it criticized in *Fewell*—that through interlocutory appeals, an appellant would be "permitted to stall the proceedings by receiving a stay on appeal for each separate order." 346 Ark. at 258, 57 S.W.3d at 151.

Third, if the circuit court automatically loses jurisdiction to the extent Ed & Co.

argued, why do some court rules assume those proceedings can and will continue, and the

court's orders can be enforced unless stayed?  For example, here are several provisions in

Arkansas Rule of Civil Procedure 62 that assume so:

> (a) *Automatic Stay; Exceptions*.  Except as otherwise ordered by the court, no execution or enforcement proceedings shall issue on any judgment or decree until after the expiration of ten (10) days from the entry thereof. *Unless otherwise ordered by the court, an interlocutory or final judgment in an action for an injunction or in a receivership action shall not be stayed during the period after its entry and until an appeal is taken or during the pendency of an appeal.*  The provisions of subdivision (c) of this rule govern the suspending, modifying, restoring or granting of an injunction during the pendency of an appeal.

> . . . .

> (c) *Injunction Pending Appeal*. When an appeal is taken from an interlocutory or final judgment granting, dissolving or denying an injunction, *the court from which the appeal is taken, in its discretion, may suspend, modify, restore or grant an injunction during the pendency of the appeal* upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

> (d) *Stay Upon Appeal*.  When an appeal is taken, the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule, and except as to child custody orders and similar orders.  The bond may be given at or after the time of filing the notice of appeal.  After an appeal has been docketed in the appellate court, application for leave to file a bond may be made only in such court.

> . . . .

> (f) *Power of Appellate Court Not Limited*.  The provisions of this rule do not limit any power of the appellate court to stay proceedings during the pendency of an appeal, or to suspend, modify, restore or grant an injunction during the pendency of any appeal or to make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered.

> (g) *Stay of Judgment as to Multiple Claims or Parties*.  When a court has ordered a final judgment under the conditions stated in Rule 54(b), the court may stay enforcement of that judgment until the entering of a subsequent

judgment or judgments and may prescribe such conditions as are necessary to secure the benefit thereof to the party in whose favor the judgment is entered.

Ark. R. Civ. P. 62 (emphasis added).

Another rule of appellate procedure deals with how to obtain a stay when an appeal has been lodged. Ark. R. App. P.–Civ. 8. There are others. *E.g.*, Ark. R. Civ. P. 54(b)(4) ("An appeal of a judgment, order, or other form of decision containing the certificate required by paragraph (1) of this subdivision shall not affect the trial court's jurisdiction over other claims or parties."); Ark. R. App. P.–Civ. 2(f)(3) ("Neither the petition [to permit a discovery appeal under Arkansas Rule of Civil Procedure 26(c)] nor the grant of permission for an appeal shall delay any scheduled trial or lower-court proceeding unless the circuit court or the Supreme Court orders.").

It is not clear that the usual scope of jurisdiction the circuit court is said to retain during an appeal—matters "independent of," "collateral to" or "supplemental to" the judgment—applies the same way when both the appealed order and the later order involve determinations that are collateral to the merits of the parties' claims. *Box* and *McClane*, Ed & Co.'s strongest cases, each involved a preliminary injunction entered in a case where the merits potentially depended on a legal issue the appellate court could decide in the interlocutory appeal—in *Box*, the enforceability of a covenant not to compete; in *McClane*, the constitutionality of a legislative act. There was no similar overlap here. Lisa won judgment against Ed & Co. after her trustee capacity and their liability were settled through collateral determinations that default was the appropriate sanction for conduct by Zoran, and then Ed & Co., that made it all but impossible for her to litigate the merits.

12

The sanctions orders eliminated the need for Lisa to prove Zoran's incapacity (for example) at trial to obtain the relief she got. As it happens, we affirm those orders. But if we had reversed them instead, our mandate would not have precluded Lisa from winning the same relief, in the same trustee capacity, if she could prove her claims on the merits.[3] The circuit court had jurisdiction, and discretion, to let discovery go forward during Zoran's appeal so she could prepare to do that. Necessarily, the court also had jurisdiction, and discretion, to enforce its related orders when Ed & Co. refused to comply.

### III.

Ed & Co.'s notice of appeal indicates they appeal from the judgment entered 17 January 2023, "as well as all other intermediate orders necessarily affecting the final judgment." In the briefs, they challenge the 14 July 2021 order granting preliminary injunction, which they assert is an "intermediate order" they can appeal from the final judgment under Arkansas Rule of Appellate Procedure–Civil 2(b).

Our supreme court has held otherwise. *Steinbuch v. Univ. of Ark.*, 2019 Ark. 356, at 11 n.5, 589 S.W.3d 350, 357 n.5 (citing *In re Est. of Stinnett*, 2011 Ark. 278, 383 Ark. 357). Assuming a Rule 2(a)(6) order could be a Rule 2(b) order for measuring timeliness of the notice of appeal from that order, despite *In re Stinnett*, this would still be an "appeal . . . taken from an interlocutory order under Rule 2(a)(6)" in which the record was due within thirty days of the first notice of appeal. Ark. R. App. P.–Civ. 5(a). The third-party

---

[3]For all we know, she *did* prove it at the January 2023 bench trial Ed & Co. specifically excluded from the record on appeal.

defendants filed that notice of appeal 15 February 2023. They lodged the record 16 May 2023. That part of the appeal is too late.

Affirmed in part; dismissed in part.

GRUBER and THYER, JJ., agree.

*Matt Kezhaya* and *Sonia Kezhaya*, for appellants.

*Wright, Lindsey & Jennings LLP*, by: *Gary D. Marts, Jr.*, *Eric Berger*, and *Caley B. Vo*, for appellee.