Circ. 10/10/2024

Cite as 2024 Ark. App. 499

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-22-46

|  |  |
|---|---|
| ED PETERS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ZORAN PETERS, DECEASED<br>APPELLANT | **Opinion Delivered** October 23, 2024<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04PR-19-356] |
| V. |  |
| LISA WOODS, INDIVIDUALLY AND IN HER CAPACITY AS TRUSTEE OF THE EDWARD GRIMES TRUST, THE ESTHER GRIMES TRUST, AND THE PETERS FAMILY LIVING TRUST<br>APPELLEE | HONORABLE DOUG SCHRANTZ, JUDGE<br><br><br>APPEAL DISMISSED; AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

We decide two appeals today from two-stage proceedings in the same probate docket, case number 04PR-19-356 in the Benton County Circuit Court. This is an appeal from a May 2021 order that struck Zoran Peters's pleadings as a sanction for contempt and noncompliance with discovery orders, ending the first stage. It might (or might not) also be an appeal from a preliminary-injunction order entered in July 2021; we don't need to decide. The other appeal, number CV-23-332, *Peters v. Woods*, 2024 Ark. App. 500, ___ S.W.3d ___ , involves a judgment for Lisa Woods in her capacity as trustee of the Peters Family Living Trust (or "Peters Trust") on the third-party complaint she filed to start the second stage of the proceedings.

On these facts, litigation was as predictable as sunrise. Zoran and his wife, Sally Peters (formerly Grimes), parents of Lisa Woods and Ed Peters, created the Peters Trust in January 2014. They were aging and sitting on quite a few eggs. By March 2018, Zoran was seventy-eight. Sally was seventy nine and on the precipice of incapacity, if not on the other side.[1] On March 20, she resigned as Zoran's co-trustee. The Peters Trust had always provided that Lisa would succeed her parents as trustee, and Lisa would get everything, and Ed nothing, once both parents had died. Within six weeks of Sally's resignation, three trust amendments were made or attempted—first appointing, then removing Lisa as Zoran's co-trustee; then, on May 7, making two changes to the main terms:

1. Ed, not Lisa, would be the successor trustee.

2. Instead of Lisa getting everything and Ed nothing when the last parent died, Ed would get everything and Lisa nothing.

Because this appeal is from a sanctions order, not a judgment on the merits, it's enough to know that the trust could be construed to invalidate the later amendments and acts Zoran took as trustee without Lisa's agreement (probably all of them since her appointment) if Zoran or Sally lacked capacity at relevant times beginning in 2018. Further, the trust provided that they would be considered incapacitated either if (1) a doctor or mental health professional opined that he or she was unable to effectively manage his property or financial affairs; (2) he or she refused to submit to provide information or submit to examination to verify capacity; or (3) a court declared him or her disabled, incompetent,

---

[1]Sally died under guardianship 4 May 2019, one day after Zoran filed this proceeding. The record includes a sworn certification from a clinical neuropsychiatrist who examined her 4 April 2018 that her intellectual functioning was "significantly limited by cognitive decline secondary to dementia."

or legally incapacitated. Zoran and Sally had lived in Arkansas for years. Recently, they had lived in Rogers, near Lisa, a vice president at Walmart.

At an unknown point, Zoran either moved to Florida with Ed, or Ed took Zoran to Florida. Through counsel, Zoran commenced this proceeding in May 2019 to compel Lisa, who was trustee of two Grimes family trusts, to transfer some $750,000 from those trusts (under which Lisa and Ed would split the funds that remained at Sally's death) to the Peters Trust (under which, as then stated, Ed would get it all). In February 2020, Lisa filed a counterpetition seeking, among other things, to remove Zoran as trustee and nullify the unfavorable trust amendments as products of Zoran's incapacity and Ed's coercion and undue influence.

The counterpetition came amid Lisa's unsuccessful years-long campaign to secure such basic information as Ed's and Zoran's physical addresses. Her first interrogatory asked Zoran to provide "the complete present or last known physical address and mailing addresses . . . of all persons known to [Zoran], [his] attorneys, or other representatives" who had knowledge of the subject matter. Zoran did not object and named Ed and himself (among others) in the response. But he did not provide a physical address for either person. Although the failure to object waived any objection to that part of the request, Ark. R. Civ. P. 33(b)(4), and the court ordered Zoran to answer it, the only address Zoran would ever give for Ed—the same address given later for all third-party defendants—was a post-office box in a UPS store.

In this instance, and others, Zoran's refusal to comply with discovery sowed the seeds for later claims of procedural advantage, first by Zoran, then the third-party defendants.[2] For example, after Zoran's counsel withdrew from representation, and Zoran continued to be in noncompliance after the discovery deadline had passed, the circuit court first entered discovery sanctions 15 December 2020. It vacated that order on Zoran's motion, through new counsel, representing that he had not received either Lisa's motion to show cause and for sanctions or the court's notice setting the most recent hearing. (Zoran still did not comply.) The shenanigans from Zoran's side prevented any independent verification of his condition, mental capacity, or free intentions in the proceeding. It appears he was never deposed. He has since died.[3]

Finally, after at least five hearings, and ten months after the court had first ordered Zoran to comply with a few discovery requests and provide an accounting of transfers involving the Peters Trust in the disputed period, the court again struck his petition and response to Lisa's counterpetition, leaving no dispute that Lisa was the sole trustee of the Peters Trust. That order (the "sanctions order"), the first one Zoran has appealed, started the timeline of jurisdictionally relevant events:

---

[2]The record suggests, shall we say, that Ed was controlling Zoran's litigation. In July 2020, Zoran's counsel moved to withdraw because, among other things, "the [c]lient's agent insists upon taking action with which counsel has a fundamental disagreement." The motion represents they had "discussed the matter with [Zoran's] agent, [and had] attempted multiple times to contact [Zoran.]" At a hearing on the motion, counsel acknowledged, "Certainly, Mr. Edward Peters is Zoran Peters' agent." No power-of-attorney instrument for Zoran was introduced.

[3]Lisa alerted this court in her brief that Zoran had died as early as 24 August 2021. Ed acknowledged the death, but not any date, in a motion to be substituted for Zoran on appeal.

4

| | |
|---|---|
| **25 May 2021** | Court enters sanctions order. |
| **3 June 2021** | Lisa moves for leave to file a third-party complaint, individually and as sole trustee of the Peters Trust, against Ed, Jennifer, and JASP Real Estate LLC. |
| **4 June 2021** | Lisa files third-party complaint. |
| **7 June 2021** | Lisa files emergency motion for injunctive relief identifying more than $1 million in transactions with assets diverted from the Peters Trust to Jennifer, Jennifer's mother, and JASP Real Estate LLC, seeking an order that the third-party defendants prepare and submit an accounting of transfers and assets from the Trust since 2018. |
| **8 June 2021** | Court enters TRO and sets preliminary injunction hearing. |
| **23 June 2021** | Zoran files notice of appeal from sanctions order. |
| **14 July 2021** | Court enters preliminary injunction ordering Zoran, Ed, Lisa, JASP Real Estate LLC, and "anyone acting in active concert or participation with any of them" to stop exercising dominion or control over property sourced from or traceable to the Peters Trust, and ordering third-party defendants to prepare and submit within ten days an accounting of all actions and transactions in connection with those asset transfers. |
| **20 July 2021** | Third-party defendants file notice of removal to the U.S. District Court for the Western District of Arkansas (the "federal district court"). |

At this point, the timeline briefly breaks into two tracks, one continuing in circuit court and one beginning in federal district court styled *Lisa Woods v. Edward Ivan Peters et al.*, No. 5:21cv5130-TLB.

| Circuit Court | Federal District Court |
| --- | --- |

**22 July 2021**
Zoran files amended notice of appeal that adds an appeal from July 14 preliminary injunction.

**28 August 2021**
Zoran moves under Ark. R. App. P.–Civ. 5(b) to extend time to lodge appellate record.

**3 September 2021**
Circuit Court enters agreed order extending record deadline to 23 January 2022.

**24 September 2021**
Federal district court enters first remand order.

**27 September 2021**
Clerk of federal district court mails certified record of proceedings and remand order to clerk of circuit court clerk.

**19 January 2022**
Zoran files a second amended notice of appeal.[4]

Finally, on 20 January 2022, Zoran filed a petition for a writ of certiorari to complete the record in this court along with a partial record: the sanctions order, June 23 notice of appeal, July 14 preliminary-injunction order, July 22 amended notice of appeal, and

---

[4]The second amended notice designated an appeal from the same two orders as the amended notice. Both designated a partial record. The second amended notice corrected the dates of two file-marked collections of records that were specifically excluded from the record, probably because they appear in the "RT" record as exhibits to a 7 July 2021 hearing.

September 3 order extending the record deadline. We granted the writ. The parties briefed the appeal on the full record, and here we are.

Now, the rub. To decide an appeal, we must confirm that a timely notice of appeal was filed and the record was timely lodged. Whether we view the 25 May 2021 sanctions order as an order that strikes a pleading under Arkansas Rule of Appellate Procedure–Civil 2(a)(4) or an appealable contempt order under Rule 2(a)(13), the record was originally due within ninety days from Zoran's June 23 first notice of appeal. Ark. R. App. P.–Civ. 5(a).

A circuit court can extend this deadline for up to seven months from the first notice of appeal under Rule 5(b)(1). At the end of the Rule 5(b)(1) runway, or if the appellant "demonstrates (by affidavit or otherwise) an inability to obtain entry of an order of extension" from the circuit court in time, the appellate courts can *in effect* extend the time further through certiorari. Ark. R. App. P.–Civ. 5(b)(3); Ark. Sup. Ct. R. 3-5. Ed probably thought he had done this: he lodged a partial record 20 January 2023, before the 23 January 2023 extended deadline in the circuit court's September 3 order.

But the September 3 order is void. It was entered while this case was removed to federal district court. On remand, a civil case "stands as if it had never been removed from state court," meaning the federal-court proceedings during the removal are ignored. *NCS Healthcare of Ark., Inc. v. W.P. Malone, Inc.*, 350 Ark. 520, 526, 88 S.W.3d 852, 856 (2002). But the state-court proceedings during removal must also be ignored. The Supreme Court of the United States held so in 2020 on writ of certiorari to a Puerto Rico court, which is treated like a state court for removal law:

> Once a notice of removal is filed, "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d). The

7

state court "los[es] all jurisdiction over the case, and, being without jurisdiction, its subsequent proceedings and judgment [are] not . . . simply erroneous, but absolutely void." *Kern v. Huidekoper*, 103 U.S. 485, 493 (1881). "Every order thereafter made in that court [is] *coram non judice*," meaning "not before a judge." *Steamship Co.* v. *Tugman*, 106 U.S. 118, 122 (1882); *Black's Law Dictionary* 426 (11th ed. 2019). *See also* 14C C. Wright, A. Miller, E. Cooper, J. Steinman, & M. Kane, Federal Practice and Procedure § 3736, pp. 727–729 (2018).

> The Court of First Instance issued its payment and seizure orders after the proceeding was removed to federal district court, but before the federal court remanded the proceeding back to the Puerto Rico court. At that time, the Court of First Instance had no jurisdiction over the proceeding. The orders are therefore void.

*Roman Cath. Archdiocese of San Juan, P.R. v. Acevedo Feliciano*, 589 U.S. 57, 63–64 (2020) (per curiam) (reference omitted); *see also* 48 U.S.C. § 864 (removal from courts of Puerto Rico).

*Absolutely void.* The Supreme Court vacated the orders on its own initiative, rejecting two objections that might have been made. First, the removing party had continued filing motions in the Puerto Rico court during removal and might be said to have consented to its continued jurisdiction. The Court held those actions "do not restore the jurisdiction of the state court." *Id*. at 64 (cleaned up). Second, though the Puerto Rico orders were entered before the federal district court's remand order, they were entered after the remand order's nunc pro tunc effective date. *Id*. at 65. They were still void. "Put plainly," the Court held, "the [federal] court cannot make the record what it is not. . . . [T]he case remained in federal court until" that court decided the motion to remand, and the Puerto Rico court's actions in the interim were void. *Id*. at 65 (citation and internal quotations omitted).

Both points have some relevance here. Although the record does not disclose that Lisa took affirmative steps during the removal, her counsel agreed to the September 3 circuit court extension order. But only the federal court's remand could restore the circuit court's power to enter it. Until then, the *coram non judice* proceedings had the legal force of a school play. *E.g.*, *Harris v. State*, 41 Ark. App. 207, 850 S.W.2d 41 (1993). Indeed, the Supreme Court's holding that a state court's jurisdiction is not restored until a remand order is entered, even if the federal court tries to make it effective sooner, eliminated any need to litigate protectively against the risk that a nunc pro tunc remand order might vivify state-court proceedings that were void when they occurred. *See, e.g.*, *Arkco Corp. v. Askew*, 360 Ark. 222, 200 S.W.3d 444 (2004) (appeal from summary judgment on an appeal-related legal–malpractice claim that involved a nunc pro tunc remand order).

For completeness (and to avoid duplicated effort in rehearing or review petitions), we mention other possible objections we considered. First, the notice of removal was filed by the third-party defendants who purported to remove the third-party complaint. Might the circuit court have retained jurisdiction over Zoran's part? We conclude not. The removal statutes speak of removing a "civil action." *E.g.*, 28 U.S.C. § 1441(a). Removing a case to federal court requires (among other things) filing a copy of the notice of removal with the clerk of the state court, "which shall effect the removal *and the State court shall proceed no further unless and until the case is remanded*." 28 U.S.C. § 1446(d) (emphasis added).

9

At that point, it's for the federal court to decide what parties and claims are in the case and whether any of the case is removable.[5]

*Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435 (2019), the federal district court's chief authority for the September 2021 remand order, holds that the "civil action" referred to in the removal statutes is "the action as defined by the plaintiff's complaint," which can be removed only by "the defendant to that complaint, not a party named in a counterclaim." *Id*. at 442. It follows that the same "civil action"—all of it, starting with the complaint—must be what is removed to federal court, and removed from the state court's jurisdiction, under the same statutes. (We note that the notice of removal represents that the circuit court docket sheet and 1,522 pages of pleadings were lodged with the federal court.)

Does it matter that the circuit court proceedings were essentially finished as to Zoran? Again, no. A case is considered "pending" and can properly be removed to federal court even after judgment is entered, provided it hasn't yet become final. *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 969 (7th Cir. 2013). And whether the case was *properly* removed doesn't matter anyway: the case was removed and had not yet been remanded.

Although the circuit court's loss of jurisdiction was temporary, and the September 3 order merely preserved a deadline to take action in a different court, it was nonetheless void, and we must treat it as void. Extending the time to lodge the record on appeal—like lodging that record and briefing the appeal—is a step toward judgment. Until the case was

---

[5]Under 28 U.S.C. § 1441(c)(1) & (2), if a "civil action" includes both a federal-question claim the federal court has jurisdiction to hear and a claim it has no jurisdiction to hear (or which is nonremovable by statute), "the entire action may be removed" if it could be removed without the spoiler claims, and "the district court shall sever [them] from the action . . . and shall remand the severed claims" to the court from which they were removed.

remanded, it was unclear that our state courts would ever resume jurisdiction to enter that judgment. The U.S. Court of Appeals for the Eighth Circuit has held that a removal deprived *this court* of jurisdiction even to dismiss an appeal that was pending in the removed case. *Ward v. Resol. Tr. Corp.*, 972 F.2d 196, 198 (8th Cir. 1992). Every interest, in other words, weighs against giving the proceedings during removal any effect.

Where does that leave us? At most, Zoran had ninety days to lodge the record unless a valid extension order was entered. He filed his first notice of appeal 23 June 2021. Between that day and the July 20 first notice of removal, 23 days passed. We hold, consistent with the general rule, that Zoran's state-court deadlines, including appeal-related deadlines, were tolled during the removal. *See Sage Fin. Props., LLC v. Fireman's Fund Ins. Co.*, 458 P.3d 998, 1000 (Mont. 2020). At latest, remand was effective September 29. Between September 29 and 20 January 2022, when the record was lodged, 113 days passed. Because Zoran's record was untimely despite tolling, even if he had ninety days from his first notice of appeal to lodge it, we do not address whether his amended notice of appeal during the removal was effective or, if so, whether designating an appeal from the later preliminary injunction order made the record still more untimely. Ark. R. App. P.–Civ. 2(a)(6) & 5(a).

Appeal dismissed; affirmed.

GRUBER and THYER, JJ., agree.

*Kezhaya Law PLC*, by: *Matthew A. Kezhaya*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Gary D. Marts, Jr.*, *Eric Berger*, and *Caley B. Vo*, for appellee.

11