Cite as 2026 Ark. App. 56

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-24-504

| | |
|---|---|
| CHARLES E. HAMNER<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS COUNTY SHERIFF'S DEPARTMENT AND DETENTION FACILITY; AND DEAN MANNIS, CHRIS POLLARD, PATRICIA SNYDER, PEGGY PITTS, AND JOHNNY CHEEK, ALL IN THEIR INDIVIDUAL CAPACITIES<br><br>APPELLEES | Opinion Delivered  January 28, 2026<br><br>APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, SOUTHERN DISTRICT<br>[NO. 01DCV-23-108]<br><br>HONORABLE DONNA GALLOWAY, JUDGE<br><br><br><br>AFFIRMED |

**MIKE MURPHY, Judge**

Appellant Charles Hamner, an inmate incarcerated in the Arkansas Division of Correction (ADC), appeals from the Arkansas County Circuit Court's order dismissing his complaint filed against appellees under the Arkansas Civil Rights Act of 1993 (ACRA), codified at Arkansas Code Annotated sections 16-123-101 to -108 (Repl. 2016 & Supp. 2021). Hamner alleges that appellees violated his due-process rights and falsely imprisoned him in connection with his removal from a parole-violator program and transfer from the Arkansas County Detention Center to an ADC facility.  Appellees moved to dismiss the action and later removed the case to federal court. After remand by the federal court, the

circuit court dismissed Hamner's complaint for failure to state a claim upon which relief can be granted. We affirm.

Hamner is currently serving an aggregate sentence of thirty-five years' imprisonment for kidnapping, residential burglary, and theft of property imposed in January 2015. He was paroled in March 2020. *Hamner v. Ark. Post-Prison Transfer Bd.*, 2025 Ark. 191, at 1–2, 723 S.W.3d 632, 633. On November 28, 2023, he filed a civil-rights complaint against the Arkansas County Sheriff's Department and Detention Center and the sheriff and four employees of the detention center in their individual capacities.

According to the exhibits attached to the complaint, on May 2, 2021, Hamner was arrested while on parole and charged with new offenses: aggravated assault, domestic battering, and terroristic threatening. On May 12, 2021, he voluntarily waived his right to a parole-revocation hearing, he admitted to having violated the conditions of release as alleged, and his parole was revoked. He was placed in the custody of "the Arkansas Department of Correction – Suspended" in what is known as the Short-Term Revocation Program (STRP), the procedures for which are set out in Arkansas Code Annotated section 16-93-715 (Supp. 2021). The version of the statute in effect in May 2021 provided that a parolee subject to a parole-revocation hearing for a serious-conditions violation, like Hamner, was subject to confinement before being released and returned to parole supervision for exactly 180 days. *See* Ark. Code Ann. § 16-93-715(a)(1)(B) (later amended, effective July 28, 2021, changing 180 days to 120 days). The statute further provided that the 180-day period of confinement "*may* be reduced by the Department of Correction or the Department of Community

2

Correction" by no more than 50 percent "for good behavior and successful program completion." Ark. Code Ann. § 16-93-715(a)(2) (emphasis added). "The location of the appropriate confining facility in which a parolee serves a period of confinement under this section shall be determined by the Board of Corrections." Ark. Code Ann. § 16-93-715(c).

In connection with Hamner's revocation-hearing waiver, the ADC discretionarily reduced the period of confinement required for his parole violation from 180 days to 90 days subject to the following conditions: (1) that he was eligible to participate in the STRP; (2) that he maintain good behavior at the county detention center; and (3) that he have an approved parole plan at the end of the ninety-day period. If Hamner satisfied these requirements, he would be considered for discretionary reinstatement of parole after expiration of the ninety-day period. Otherwise, he would be eligible to be considered for discretionary release again in 180 days, or November 2021.

On June 25, 2021, a county detention officer, appellee Patricia Snyder, sent a behavior report to "Administration/Sheriff" regarding "Inmate Charles Hamner." The report stated that while Snyder and another detention officer, appellee Chris Pollard, were passing out medication and trays, Hamner reported that he was not going back to his pod because "Officer Ricky [Smith] made me look like a punk in front of the whole pod yesterday." Hamner told Snyder that "when I see [Officer Smith] again I will roll him and we will see who the bitch is then. He wanted to make me look like a punk ass bitch, I'll show him." When Pollard returned to pick up Hamner's tray, Hamner again threatened "to roll [Officer Smith] the first time I see him." According to Hamner's complaint, this behavior

report is what disqualified him from the reduced period of confinement under the STRP and resulted in his transfer from the county detention center to an ADC facility.

Hamner alleges in the complaint that on June 30, 2021, the county detention center used its transport officer, appellee Chris Pollard, to illegally transfer him from the "legal custody" of the Arkansas Division of Community Correction (ACC) to the "illegal custody" of the ADC "without consent" and "without sufficient legal or lawful authority." This "illegal transfer," the complaint alleges, "interfere[ed] substantially with [Hamner's] personal liberty" and "expos[ed] him to a substantial risk of serious physical injury"—namely, "inmate-on-inmate abusive sexual contact" alleged to have occurred nearly two years later. Additionally, the complaint alleges that "said illegal transfer was initiated by and did occur because of the named Respondents' submitting a [behavior report] on or around June 25, 2021, to the Arkansas Parole Board alleging [Hamner] had failed to maintain good behavior while in their custody under contract for the [ACC]." According to the complaint, the county detention center "never provided [Hamner] with a rules violation report charging him with violating any particular rule of the facility, nor, did they ever take him to an institutional hearing and find him guilty of violating any particular rule of its facility before illegally transferring him between divisions" in violation of state law, its own "operating procedure," administrative regulations, and the Arkansas Constitution. The complaint sought monetary damages of "fifteen hundred (1,500) dollars per day from June 30, 2021, until [Hamner] is court ordered or released from being falsely imprisoned in the [ADC]" and "an enhanced civil penalty" of $50,000 and requested that Hamner's "parole be re-instated immediately."

The circuit court granted Hamner leave to proceed in forma pauperis, and summonses were issued for the named defendants on November 28, 2023.

On January 17, 2024, Hamner filed a motion for default judgment. He asserted in the motion that he mailed copies of the complaint and summonses to the Arkansas County Sheriff's Department to serve on defendants/appellees on December 4, 2023, and defendants/appellees had failed to file a responsive pleading within thirty days.

On February 2, 2024, defendants/appellees, through the office of the prosecuting attorney, filed a motion to dismiss for, among other things, failure to state a claim upon which relief can be granted pursuant to Arkansas Rule of Civil Procedure 12(b)(6).[1]

On February 16, 2024, defendants/appellees, through their attorneys with the law firm of Heaton & Harris LLP, filed a notice of removal of the case to the United States District Court for the Eastern District of Arkansas. They simultaneously moved to stay the responsive-pleading deadline, noting that they had removed the case to federal court because the complaint appeared to raise claims under 42 U.S.C. § 1983. Additionally, they noted that the federal Prison Litigation Reform Act, 28 U.S.C. § 1915A, requires a court to screen and dismiss a complaint, or any portion of the complaint, filed by a prisoner against a governmental entity or officer or employee of a governmental entity that (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary

---

[1]The motion to dismiss construed Hamner's complaint as a petition for writ of habeas corpus pursuant to Arkansas Code Annotated sections 16-112-201 to -208 and asserted that his due-process claims are not cognizable in habeas corpus proceedings.

relief from a defendant who is immune from such relief. They included with the motion an "Alternative Answer" denying the allegations in the complaint and asserting the defenses of qualified immunity, tort immunity, immunity from punitive damages for official-capacity claims, and failure to exhaust administrative remedies. They also filed a response to Hamner's motion for default judgment and submitted proof-of-service documents showing that service was made on defendant/appellee Pollard on January 17, 2024, and on each of the other named defendants/appellees on January 19, 2024.

On February 22, 2024, Hamner filed a response and objection to defendants'/appellees' motion to dismiss.

On March 29, 2024, the federal court ordered the case remanded to the Arkansas County Circuit Court because the action asserted state-law claims brought under the ACRA and raised no federal constitutional claims. The federal court's remand order was filed in the circuit court on April 10, 2024.

On April 16, 2024, Hamner filed a motion requesting a hearing on his motion for default judgment.

On April 30, 2024, the circuit court entered an order as follows:

> After review of the parties' pleadings, and without the necessity of a hearing, the Court denies the PLAINTIFF'S Motion for Default and Plaintiff's Motion for Hearing on Default Judgment. Timely responses were filed by all Defendants after the parties were served with their respective Complaints. Additionally, upon review and screening under the Prison Litigation Reform Act, the Plaintiff's Complaint filed on November 28, 2023, is dismissed due to the pleading of frivolous claims and failing to state a claim upon which relief may be granted.

6

Hamner brings this appeal challenging the circuit court's denial of his motion for default judgment and the dismissal of his complaint.

The standard by which we review the denial of a motion for default judgment is whether the circuit court abused its discretion. *Styles v. Styles*, 2024 Ark. App. 583, at 10, 703 S.W.3d 484, 490. The circuit court abuses its discretion when it acts thoughtlessly, improvidently, or without due consideration. *Id.* When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, judgment by default may be entered by the court. Ark. R. Civ. P. 55(a). Default judgments are not favored by the law and should be avoided when possible. *Styles*, 2024 Ark. App. 583, at 10, 703 S.W.3d at 490. Because of its harsh and drastic nature, which can result in the deprivation of substantial rights, a default judgment should be granted only when strictly authorized and when the party affected should clearly know he is subject to default if he does not act in a required manner. *Id.*

Here, in accordance with Arkansas Rule of Civil Procedure 4, the circuit clerk issued the summonses to Hamner on November 28, 2023. *See* Ark. R. Civ. P. 4(a) (providing that "[i]mmediately on the filing of the complaint, the clerk shall issue a summons to the plaintiff or the plaintiff's attorney, who shall deliver it for service to a person authorized by subdivision (c) of this rule to serve process"). On December 4, 2023, Hamner mailed the summonses and complaint to the Arkansas County Sheriff's Department to serve process. *See* Ark. R. Civ. P. 4(c)(2) (authorizing "the sheriff of the county where the service is to be

made, or his or her deputy," to serve process). Proof-of-service documents show that process was served on defendant/appellee Pollard on January 17, 2024, and on each of the other named defendants/appellees on January 19, 2024.

Under Arkansas Rule of Civil Procedure 12, "[a] defendant shall file his or her answer within 30 days after the service of summons and complaint upon him or her." Ark. R. Civ. P. 12(a)(1); *see also* Ark. R. Civ. P. 12(a)(3) (providing that when a case is removed to federal court and subsequently remanded, an adverse party has thirty days from receipt of plaintiff's notice of filing certified copy of federal court's order of remand to file an answer). On February 16, 2024, before expiration of the thirty-day period for filing an answer, appellees filed a notice of removal of the case to federal court. On the same day, appellees filed a motion to stay the responsive-pleading deadline and, in the alternative, a timely answer. Because appellees' answer was timely filed, the circuit court did not abuse its discretion in denying Hamner's motion for default judgment.

We turn now to Hamner's challenge to the dismissal of his complaint. When reviewing a circuit court's order of dismissal, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Muntaqim v. Kelley*, 2022 Ark. App. 76, at 2, 641 S.W.3d 35, 40. All reasonable inferences are resolved in favor of the complaint, and the pleadings are liberally construed. *Id.*, 641 S.W.3d at 40. Under our fact-pleading requirement, a complaint must state facts, not mere conclusions, to entitle the pleader to relief. *Id.*; *see also* Ark. R. Civ. P. 8(a) (providing that "[a] pleading which sets forth a claim for relief . . . shall contain (1) a statement in ordinary and concise language of facts

showing that the court has jurisdiction of the claim . . . and that the pleader is entitled to relief[]"). While we treat the facts as alleged as true, we do not treat the party's theories, speculations, or statutory interpretations as such. *Null v. Ark. Parole Bd.*, 2019 Ark. 50, at 2, 567 S.W.3d 482, 483. Allegations that are speculative and conclusory are always properly dismissed. *Muntaqim v. Payne*, 2021 Ark. 162, at 8, 628 S.W.3d 629, 637; *see also Banks v. Jones*, 2019 Ark. 204, at 4, 575 S.W.3d 111, 115 (bare allegations and conclusory statements will not establish a constitutional claim).

The ACRA imposes liability when state officials acting under color of state law deprive persons of their rights under the Arkansas Constitution. Ark. Code Ann. § 16-123-105(a). In construing the ACRA, this court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act, 42 U.S.C. § 1983. *Muntaqim*, 2021 Ark. 162, at 5, 628 S.W.3d at 635. To state a claim under the ACRA, a prisoner must plead that the state official, through his or her own individual actions, violated the constitution. *Id.* at 10, 628 S.W.3d at 638. "A bare allegation that someone in supervisory authority has been deliberately indifferent without any specification of that person's contact in fact with the prisoner or even an explicit charge of inadequate training or supervision of subordinates is not sufficient[.]" *Id.*

As an initial matter, we disagree with Hamner's contention that the circuit court committed reversible error simply because the order of dismissal indicates that the court reviewed and screened the complaint under the federal Prison Litigation Reform Act (PLRA). The PLRA, among other things, mandates dismissal of a prisoner's complaint or

portion thereof if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915A(b)(1). We acknowledge that the Arkansas Supreme Court has said that the PLRA "is not applicable to actions brought against public officials in their individual capacities under ACRA and Arkansas tort law." *See Harmon v. Jackson*, 2018 Ark. 196, at 3, 547 S.W.3d 686, 688 (holding that circuit court erred in granting summary judgment and dismissing prisoner's case on the basis of prisoner's failure to exhaust administrative remedies as required under the PLRA). In this case, however, despite the order's reference to the PLRA, the circuit court found that dismissal was appropriate on the ground presented in appellees' motion to dismiss—that is, because the complaint "fail[ed] to state a claim upon which relief may be granted." And, upon review, we conclude that the complaint plainly fails under Arkansas's fact-pleading standard.

To begin with, beyond cursory references to defendants/appellees Pollard and Snyder, the complaint alleges no facts against any of the named defendants/appellees. The complaint's conclusory statements that defendants/appellees are guilty of restraining Hamner's liberty without lawful authority fall short of Arkansas's fact-pleading requirement. *Muntaqim*, 2021 Ark. 162, at 10, 628 S.W.3d at 638.

Further, to maintain an actionable procedural due-process claim, an inmate must show that he has been deprived of some constitutionally protected liberty or property interest. *Id.* at 9, 628 S.W.3d at 637. Prison policies and procedures, like the ones Hamner complains of here, however, do not create a liberty interest to which due process can attach. *Id.*, 628 S.W.3d at 637–38.

10

Our supreme court has repeatedly held that there is no liberty interest in parole in Arkansas. *Wood v. Ark. Parole Bd.*, 2022 Ark. 30, at 5, 639 S.W.3d 340, 344. In order for a parole statute or regulation to create a liberty interest, it must contain particularized substantive standards or criteria that significantly guide parole decisions, and the statute must use mandatory language. *Id.* Arkansas parole statutes and parole-board policies and regulations do not create a protectable liberty interest in discretionary parole decisions, and an inmate has no protectable liberty interest in having the ADC follow its own policies. *Robinson v. Payne*, 2024 Ark. 94, at 4, 688 S.W.3d 409, 414. With respect to inmates seeking parole, due process requires that the State provide the inmate with a hearing and with the reasons why the parole was denied. *Id.* at 6, 688 S.W.3d at 415.

Hamner, however, does not allege that he was denied a parole hearing or even a parole-revocation hearing. Rather, he complains that appellees did not follow their own procedures and regulations and state law in removing him from a discretionary parole-violator program that merely gave him an opportunity to be considered for discretionary parole again three months sooner than he would have been if he satisfied certain requirements. Hamner plainly has not pleaded any facts that would support a claim for deprivation of his right to due process of law. Accordingly, the circuit court properly dismissed his civil-rights complaint.

Hamner also has not pleaded any facts that would support a claim for the intentional tort of false imprisonment. "False imprisonment is the unlawful violation of the personal liberty of another consisting of detention without sufficient legal authority." *Trammell v.*

*Wright*, 2016 Ark. 147, at 4, 489 S.W.3d 636, 638. Hamner, of course, was detained not without legal authority, but pursuant to a judgment and commitment order imposed in 2015. Hamner's allegations relating to false imprisonment are premised on his belief that he was entitled to due process. As we have already explained, he was not.

Hamner's contention that appellees violated Arkansas Code Annotated section 12-27-127 when they "transferred" him from the county detention center to an ADC facility without a hearing, moreover, is simply wrong. Section 12-27-127 concerns commitments to the ADC with judicial or administrative transfer to an ACC community correction center. It has nothing to do with parole violators. The most it says about parole is that an inmate who has been transferred under this subsection shall be administratively transferred back to the ADC if he is denied parole or fails to complete or is removed from a reentry program. Ark. Code Ann. § 12-27-127(d)(4). But Hamner is a parole violator, not an inmate who was denied parole or removed from a reentry program in a community correction center. In sum, because the complaint does not state facts to support an argument that appellees committed the intentional tort of false imprisonment, the circuit court's dismissal was proper.

We likewise reject Hamner's contention that the circuit court erred in failing to address his "amended complaints." Hamner cites certain motions that he filed in the federal court proceedings while the case was removed. According to the federal court's docket, Hamner filed motions (1) "to Add Plaintiff's Motion Filed in State Court" on March 20, 2024; (2) "to Amend Page 1 of Complaint" on March 25, 2024; and (3) "to Amend Complaint" on March 28, 2024. Hamner's related point alleging that the circuit clerk made

a false material statement in the case caption apparently relates to his March 25, 2024 motion to amend. In that motion, Hamner sought leave to change "the capacity in which the defendants are all sued" to both "individual and official capacities." Hamner, however, never filed an amended complaint in the circuit court.

Our supreme court "has long held that after remand from federal court, a case stands as if it had never been removed from state court, and what happened in federal court has no bearing on the proceeding in state court." *NCS Healthcare of Ark., Inc. v. W.P. Malone, Inc.*, 350 Ark. 520, 526, 88 S.W.3d 852, 856 (2002); *see also Peters v. Woods*, 2024 Ark. App. 499, at 7, 699 S.W.3d 827, 833. Hamner's "amended complaints" were never before the circuit court. Accordingly, the circuit court did not err by failing to address them.

Affirmed.

KLAPPENBACH, C.J., and VIRDEN, J., agree.

*Charles E. Hamner*, pro se appellant.

*Heaton & Harris LLP*, by: *Colin C. Heaton*, for appellees.